IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| | § | Civil Action 2:11-cv-00290 |
| ASARCO LLC, | § § | |
| Debtor. | § § | Bankruptcy Case No. 05-21207 |

### APPELLANT ASARCO LLC'S POST-HEARING BRIEF

Appellant ASARCO LLC ("ASARCO") files this Post-Hearing Brief, and in support thereof, would respectfully show the Court as follows.

## I.
## INTRODUCTION

The Court heard oral argument in this bankruptcy appeal on March 27, 2012. At the conclusion of the hearing, the Court invited the parties to submit any additional information they wanted the Court to consider by March 16, 2012.[1] ASARCO submits its post-hearing brief to address three issues: (1) If an attorney is paid his normal hourly rate, are there any circumstances where the attorney can get a fee enhancement?; (2) Is it proper to compare average hourly rates of attorneys to determine an appropriate market rate?; and (3) Does the language in section 330 of the Bankruptcy Code support the award of fees incurred in defending a fee application?

---

[1] March 27, 2012 Hearing Transcript ("Transcript") at p. 134.

# III.
# ARGUMENT

### A. If An Attorney Is Paid His Normal Hourly Rate, Are There Any Circumstances Where The Attorney Can Get A Fee Enhancement?

The answer is no. An attorney who agreed to work on an hourly basis cannot receive a fee enhancement if he has been paid timely and regularly at his normal hourly rate with no discounts.

The Court asked ASARCO's counsel the following question during the hearing: "Under your argument, what I'm hearing you say at least is there never would be a circumstance where they would get any kind of fee enhancement … But I'm assuming the circumstance where we are going to pay somebody their hourly rate. … Their normal hourly rate on a per hour basis, nothing unusual about the fee arrangement. Is there ever a circumstance?"[2] ASARCO's counsel answered this question by providing examples where a fee enhancement might be appropriate, such as the circumstance described in *Perdue v. Kenny A.*[3] where an attorney's hourly rate did not reflect his true market value.[4] Upon review of the Transcript, it is clear that the Court's question was focused on circumstances where the first *Perdue* exception did not apply. ASARCO therefore submits its post-hearing brief to provide a clear answer to the question the Court posed.

As ASARCO indicated in its prior briefing, the purpose of section 330 is to compensate attorneys at the same rate as they would be compensated for performing comparable services in non-bankruptcy cases. The Court's question assumes that the attorney has, in fact, been paid his normal hourly rate on a per hour basis for the services rendered. If the rate obtained by the attorney is the same in bankruptcy matters as the attorney is paid in non-bankruptcy cases, the

---

[2] Transcript at 40:1-20.
[3] 130 S. Ct. 1662 (2010).
[4] *Id.* at 40:21-42:5.

2

purpose of section 330 has been satisfied, which makes a fee enhancement inappropriate. In other words, an enhancement is not necessary for the determination of a "reasonable" fee as contemplated under section 330.

In the context of this case, the evidence presented to the Bankruptcy Court was that Baker Botts was paid at the very rates it selected after a careful market analysis, including (among other things) consideration of the experience and skill of its attorneys and the rates charged for similar attorneys at its competitors. Baker Botts increased these rates at its own discretion every year of the Bankruptcy without any opposition from the Bankruptcy Court, and Baker Botts represented that "[t]hese rates are set at a level designed to fairly compensate Baker Botts for the work of its attorneys and legal assistants to cover fixed and routine overhead expenses."[5] The rates set by Baker Botts and charged during the Bankruptcy were the firm's "standard" hourly rates that it charged in both bankruptcy and non-bankruptcy matters.[6] As the purpose of section 330 has been met, the Bankruptcy Court committed legal error by awarding fee enhancements to Appellees. As the Supreme Court has stated, "There is nothing unfair about compensating these attorneys *at the very rate that they requested*."[7]

Baker Botts' argument at the hearing that ASARCO approved its fee enhancement request is inaccurate. First, the Bankruptcy Court made no finding that ASARCO approved Baker Botts' requested fee enhancement. Second, the same ASARCO directors who voted to approve Baker Botts' fee enhancement also voted to pay themselves bonuses for their work. In its order denying the directors' bonus motion, the Bankruptcy Court stated, "…no corporate authority existed for the payment of the bonuses and the Motion should be denied for that

---

[5] *See* CDR, ASARCO Exhibit 1012, at ¶ 9.
[6] *See* CDR, May 28, 2010 Hr'g Tr. at 21:4-7 (J. Kinzie).
[7] *Perdue*, 130 S. Ct. at 1676, n.7 (emphasis in original).

reason."[8] Just as no authority existed for the directors to approve bonuses to themselves, no authority existed for those directors to approve Baker Botts' fee enhancement request. ASARCO never approved a fee enhancement, it paid Baker Botts its full hourly rates, and the Bankruptcy Court erred in awarding unauthorized additional compensation.

### B. Is It Proper To Compare Average Hourly Rates Of Attorneys To Determine An Appropriate Market Rate?

The answer is no. Average hourly rates are highly misleading, and it is improper to look at average hourly rates to try and determine an appropriate market rate for an attorney.

Counsel for Baker Botts argued during the hearing that the Bankruptcy Court's reliance on average hourly rates was appropriate because "that comparison tool is the most useful tool in bankruptcies involving multiple timekeepers. In fact, the United States Trustee actually requires that a fee applicant disclose its average or blended rates in every single fee application."[9] Baker Botts then referred the Court to *In re Ginji Corporation*[10] for the proposition that "the blended rate approach is more useful in reviewing fee applications than in justifying individual rates."[11]

*In re Ginji* does not support Baker Botts' position. In that case, the bankruptcy court did not compare average hourly rates from one firm to the average hourly rates of another firm to try and determine an appropriate market rate for the applicant's individual attorneys. Instead, the court was looking at an interim fee application of debtor's counsel in the face of opposition from the United States Trustee that the fees charged were not reasonable.[12] The court had this to say about blended hourly rates:

> The Court believes that the blended rate approach is more useful in reviewing the application as a whole rather than in justifying individual rates. That is, if the

---

[8] *See* CDR, at Dkt. No. 14247, at 3.
[9] Transcript at 85:23-86:6.
[10] 117 B.R. 983 (Bankr. D. Nev. 1990).
[11] Transcript at 86:7-11.
[12] 117 B.R. at 986-87.

4

blended rate is reasonable in light of the nature and complexity of the case, then the Court will presume that the attorney performing the task is the one, from an economic standpoint, who should be performing the task. This avoids arguing over whether counsel should have used an experienced attorney at two times the rate rather than an inexperienced attorney for a lesser rate but more hours.[13]

As the above quote from *In re Ginji* illustrates, average or blended hourly rates may have some utility in assessing whether a matter, as a whole, has been staffed appropriately. However, the court correctly noted that average hourly rates are not useful to justify an individual attorney's rate. The reason is obvious—how a matter is staffed can cause the average hourly rate to fluctuate wildly. A comparison of the average hourly rates of one firm to the average hourly rates of another firm to try and determine what the appropriate market rate should be for individual attorneys fails to take this fact into account. This is precisely why the Supreme Court noted in *Perdue* that relying on average hourly rates is "highly misleading."[14]

Despite the highly misleading nature of average hourly rates, and despite the fact that average hourly rates are not useful to justify an individual attorney's rate, the Bankruptcy Court relied upon them in concluding that every single timekeeper of Baker Botts and Jordan Hyden was paid below their "true" market rate. Baker Botts presented the Court with a slide deck during the hearing that demonstrates the extent to which the Bankruptcy Court relied on average hourly rates. Most notably, in addressing the correct inquiry of how Baker Botts' Texas rates compare to other Texas firms (as opposed to the incorrect inquiry of how Baker Botts' Texas rates compare to lawyers in other, more expensive markets such as New York and Los Angeles), Baker Botts relied exclusively on average hourly rate data.[15] It did so because comparisons of actual rates would show the obvious: Baker Botts' Texas attorneys do not have rates 20% lower

---

[13] *Id*. at 990.
[14] 130 S.Ct. at 1675 n.7.
[15] *See* Baker Botts Slide Deck, at Slides 14-16.

than the rates of similarly-situated Texas lawyers.  Baker Botts is one of the top firms in Texas. Baker Botts knows this and sets its rates accordingly.

Average rate comparisons are not useful when trying to determine whether an individual attorney was paid below the market rate for attorneys of similar experience and skill.  The contention that Baker Botts' rates are 20% lower than its peers is not supported by the evidence presented to the Bankruptcy Court unless one looks to improper average hourly rate comparisons or improper comparisons of Baker Botts' attorneys to attorneys who live and practice in some of the most expensive legal communities in the United States, such as New York City and Los Angeles.  The Bankruptcy Court committed legal error by awarding Appellees fee enhancements based upon improper markets and improper average hourly rates.

### C. Does The Language In Section 330 Of The Bankruptcy Code Support The Award Of Fees Incurred In Defending A Fee Application?

The answer is no.  Section 330 does not contain a provision for the recovery of fees incurred in defending a fee application, and it was improper for the Bankruptcy Court to infer otherwise under the auspices of it being "fair" and good policy to award these fees.[16]

Counsel for Baker Botts argued during the hearing that the Bankruptcy Court "determined under the plain terms of [section 330] that fees incurred successfully defending a fee application are covered by the statute."[17]  Contrary this assertion, the Bankruptcy Court's findings did not include an analysis of the language of section 330 or a conclusion that the "plain terms" of the section allow for the recovery of fees incurred in defending a fee application.

---

[16] *See* CDR, Dkt. No. 16249-2, at 69-70 (citing *in re Worldwide Direct Inc.*, 334 B.R. 108, 111 (D. Del. 2005) (noting the "unambiguous policy inspiring Section 330(a)").

[17] Transcript at 101: 23-102: 2.

Instead, the Bankruptcy Court acknowledged that there is a split of authority in the case law because the recovery of such fees is not specifically mentioned in section 330.[18]

As ASARCO noted in its reply brief, this split of authority was present when Congress enacted the 1994 amendments to the Bankruptcy Code,[19] and Congress did not specifically authorize such fees in the amendments. Instead, Congress only included language addressing fees incurred preparing a final fee application.[20] By making provision for fees in preparing the fee application, but not making a similar provision for fees in litigating the fee application, Congress expressed its intent not to allow such recoveries.[21] Therefore, and as previously briefed by ASARCO, the American Rule applies. The Bankruptcy Court committed legal error by awarding Baker Botts the fees it incurred defending its final fee application.

## IV.
### *IN RE PILGRIM'S PRIDE* UPDATE

The Court asked the parties to provide any update available regarding the status of the Fifth Circuit appeal for the *In re Pilgrim's Pride* matter. On March 12, 2012, the Fifth Circuit tentatively calendared oral argument for the week of April 30, 2012. ASARCO and Baker Botts both filed *amicus curaie* briefs in the *In re Pilgrim's Pride* appeal, and both requested the opportunity to participate if the Fifth Circuit set the case for oral argument.

---

[18] CDR, Dkt. No. 16249-2, at 67 (recognizing the split of authority) and 70 (noting courts that have denied fees for defending fee application have done so because section 330 did not provide for their recovery).

[19] *See, e.g.*, *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 882-83 (11th Cir. 1990); *In re Jefsaba, Inc.*, 172 B.R. 786, 801–02 (Bankr. E.D. Pa. 1994); *In re DN Associates*, 165 B.R. 344, 345 (Bkrtcy. D. Me. 1994), *In re Courson*, 138 B.R. 928 (Bkrtcy. N.D. Iowa 1992); *In re Watervliet Paper Co., Inc.*, 109 B.R. 733 (Bkrtcy. W.D. Mich. 1989); *In re The Vogue, Inc.*, 92 B.R. 717, 720–21 (Bankr. E.D. Mich.1988); *In re Shaffer-Gordon Assoc., Inc.*, 68 B.R. 344, 348–50 (Bankr. E.D. Pa. 1986)); *In re Wilson Foods Corp.*, 36 B.R. 317, 323 (Bankr. W.D. Okla. 1984)).

[20] 11 U.S.C. § 330(a)(6).

[21] *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) (describing the canon of *inclusio unius, exclusio alterius* as a "strong indication" of legislative intent); *In re Sakowitz, Inc.*, 110 B.R. 268, 272 (Bankr. S.D. Tex. 1989) (applying this canon to the Bankruptcy Code as it pertains to certain attorney fee provisions).

Dated: March 16, 2012

        Respectfully submitted,

        **BRACEWELL & GIULIANI LLP**

        By: /s/ *Bryan S. Dumesnil*
        Ralph D. McBride
        State Bar No. 13332400
        Bryan S. Dumesnil
        State Bar No. 00793650
        Bradley J. Benoit
        State Bar No. 24012275
        Heath A. Novosad
        State Bar No. 24037199
        711 Louisiana Street, Suite 2300
        Houston, Texas 77002
        (713) 223-2300
        (713) 221-1212 (facsimile)

        *Counsel for ASARCO LLC*

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on March 16, 2012, a true and correct copy of the foregoing was served via electronic means to all parties entitled to receive notice in this case through the Court's ECF system.

        */s/ Bryan S. Dumesnil*
        Bryan S. Dumesnil